IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2008

## STATE OF TENNESSEE v. BEN THOMAS DOWLEN, JR.

**Direct Appeal from the Circuit Court for Rutherford County
No. F-60601B   Don R. Ash, Judge**

_____

**No. M2008-00764-CCA-R3-CD - Filed January 8, 2009**

_____

The Defendant, Ben Thomas Dowlen, Jr., pled guilty to attempted possession of a schedule I substance, a Class C felony, and agreed to a sentence of ten years as a Range II offender. The trial court imposed the agreed upon sentence, denied alternative sentencing, and ordered the Defendant to serve his ten-year sentence in prison. The Defendant appeals, contending the trial court erred when it denied the Defendant an alternative sentence. After thoroughly reviewing the record and applicable authorities, we conclude the trial court did not err when it denied alternative sentencing. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Greg Galloway (at trial), Nashville, Tennessee, and Jeffry S. Grimes (on appeal), Clarksville, Tennessee, for the Appellant, Ben Thomas Dowlen, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Matthew Bryant Haskell, Assistant Attorney General; William C. Whitesell, District Attorney General; Thomas Parkerson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Arrest & Subsequent Charges

This case arises from the Defendant's arrest on April 4, 2007, for possession of a Schedule I substance and possession of marijuana. The investigation report introduced during the Defendant's sentencing hearing set out the following version of his April 2007 arrest:

Will Holton of the [Rutherford County Sheriff's Office] . . . stopped a vehicle on I-24 for a traffic violation. [Officer Holton] made contact with the driver, Michael Bowen,

and the passenger, [the Defendant]. While [Officer Holton] was speaking with Mr. Bowen and [the Defendant], he detected an odor of burnt marijuana emitting from inside the vehicle. A probable cause search of the vehicle revealed a quantity of ecstasy and a small baggie of marijuana. Affiant then placed Mr. Bowen and [the Defendant] under arrest for felony possession of a schedule I substance and simple possession of marijuana.

The Defendant subsequently pled guilty to attempted possession of a Schedule I substance and agreed to a ten-year sentence as a Range II offender, with the manner of service of his sentence to be determined later at a sentencing hearing.

After the Defendant's arrest for the conduct underlying this case, but before his guilty plea and sentencing hearing, the Defendant was charged with: possession of ecstasy for resale; unlawful drug paraphernalia; theft of property; and possession of marijuana.

## B. Sentencing Hearing

At the sentencing hearing, the trial court reviewed an investigation report prepared in anticipation of the Defendant's sentencing, and it heard testimony from the Defendant, the Defendant's sister, and the probation officer who prepared the investigation report.

State of Tennessee Probation and Parole probation officer Erin Stephens explained the contents of the investigation report, which she compiled. In the investigation report, Stephens listed the Defendant's previous convictions that he was able to verify: possession of cocaine; possession of marijuana; criminal impersonation; resisting a stop, frisk, halt arrest; violation of the driver's license law; and several traffic offenses. The Defendant did not receive a jail sentence for any of these convictions; rather, he received either a suspended sentence, probation, or a fine. Stephens then listed several offenses that appeared on a "national record check" of the Defendant but that he was unable to verify: contempt; resisting arrest; simple possession of cocaine; simple possession of marijuana; and driving on a suspended license. The national record check revealed that the Defendant received either probation or a fine for all but one of these unverified convictions.

Stephens's research further revealed that the Defendant was charged in August 2007, four months after the conduct underlying this appeal, for possession of a Schedule I drug, possession of marijuana, possession of drug paraphenalia, and theft. Regarding the Defendant's employment, the Defendant's father faxed Stephens a letter confirming that the Defendant worked with him at an auto repair shop. The parties stipulated that the Defendant worked approximately fifty hours per week in the auto repair shop.

The Defendant testified that the information in the investigation report was accurate. However, he stated that the August 2007 charges were still pending, that he had never been convicted of a felony, and that only two of his prior convictions were drug-related. He confirmed he worked between fifty and sixty hours per week at an auto repair shop.

The Defendant testified that, although he had attended college for only one semester, he planned to return to school to study photography. The Defendant said he hoped for an alternative sentence, explaining that he regretted his past conduct, had "turned over a new leaf," and wanted to "be there for [his] family":

> I have a newborn on the way and I just have lot of goals I want to establish. And the charges that I'm facing now I don't want [anything] else to do with . . . that anymore. And I've just got a couple of . . . ambitions right now . . . . And I'm 30. I [am not getting any] younger. . . . I'm trying to turn over a new leaf and just be there for my family. I have a 9 year old little daughter now and I have [one] on the way now. So I just really want to turn a new leaf over and just be there for my family.

In response to whether he believed he had a drug problem, the Defendant said, "Well, I wouldn't call it a problem, but I experienced drugs. And I guess just hanging around the wrong people. Basically just hanging around the wrong people." He testified that the last time he used or possessed drugs was the day of his August 2007 arrest.

On cross-examination, the Defendant testified that he "[took] responsibility" for his conduct and that he would comply with the sentence the trial court imposed. However, when the trial court asked whether he would pass a drug test, the Defendant admitted that he had used marijuana within thirty days of the sentencing hearing, explaining that he made a "dumb mistake" on New Year's Day.

The Defendant's sister, Talikia Clark, testified that she interacted with the Defendant frequently because she lived near him. She echoed her brother's testimony that his drug involvement was a lapse in judgment and that he had decided to abandon drugs:

> As far as drugs I don't see I guess you'd say a kingpin drug dealer per se. I see someone that made some mistakes and some bad choices in who[m] he dealt with and the things that he would do in his life. And now I see someone that is turning his life around and trying to be there more for his family. And since I've moved back home he's been there for me and assisted me with my children. When I would go to work at night he normally keeps my kids for me if he's able. And he's been there more for his girlfriend and her son than he has been in the past. He's been there more for her lately and trying to be supportive and be in the family . . . .

Clark explained that, over the three months leading up to the hearing, the Defendant had spent more time with their family and less time "partying," stating that it had been "at least a month" since the Defendant stayed at a bar until its 3:00 a.m. closing time. She testified that she would assist the Defendant in satisfying the conditions of any alternative sentence he were to receive, saying, "If he was on probation and I saw him messing up, I would physically take him to his probation officer."

On cross-examination, Clark said she knew that the Defendant possessed 719 ecstasy pills

3

when he was arrested for the conduct underlying this appeal and that he was again arrested a few months later in August 2007 for possession of ecstasy.

After reviewing the above evidence, the trial court denied the Defendant's request for an alternative sentence. After expressing its appreciation of the Defendant's honesty, the trial court explained that the Defendant's recurrent involvement with drugs necessitated confinement. The trial court then ordered the Defendant to serve the agreed upon ten-year sentence in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court erred when it denied him an alternative sentence because it did not make adequate findings of fact to support its denial of probation and community corrections. The State responds that the trial court made an affirmative showing in the record that it considered the relevant factors and principles when it denied the Defendant an alternative sentence and that, therefore, its denial of alternative sentencing was proper.

When a defendant appeals the manner of service of a sentence imposed by a trial court, this court conducts a *de novo* review of the record with a presumption of correctness as to the trial court's determination. T.C.A. § 40-35-401(d) (2005). However, this presumption of correctness arises only if the record affirmatively shows that the trial judge considered both the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party carries the burden of showing the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. Even if we prefer a different result, we may not disturb the sentence if the trial court followed the statutory sentencing procedure, made findings of fact adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Tennessee Supreme Court noted recently that, due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A.§ 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted). Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing.[1] T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (emphasis added).

---

[1] The legislature did carve out an exception to this rule where if "a defendant with at least three (3) felony convictions is otherwise eligible, such a defendant may still be considered a favorable candidate for any alternative sentencing that is within the jurisdiction of and deemed appropriate by a drug court." 2007 Tenn. Pub. Acts 512.

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2006). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2006), Sentencing Comm'n Cmts.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2006). Also, the trial court may consider the mitigating and enhancing factors set forth in T.C.A. § 40-35-113 and 114. T.C.A. § 40-35-210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

In conducting *de novo* review of a sentencing determination, we must consider (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct; (5) any mitigating or statutory enhancement factors; (6) any statement that the defendant made on his own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-102, -103, -210 (2007); *see State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991).

In the case under submission, the Defendant agreed to be sentenced as a Range II (multiple) offender. Therefore, he cannot avail himself of the Code's language granting standard and especially mitigated offenders "favorable consideration" for alternative sentences. T.C.A. § 40-35-102(6). Therefore, the trial court had no responsibility to give the Defendant favorable consideration. As long as the trial court considered the sentencing principles and relevant facts and circumstances in sentencing the Defendant, the trial court's determination is presumptively correct. *Fletcher*, 805 S.W.2d at 789.

After the trial court considered the evidence presented at the sentencing hearing, it first focused on the Defendant's potential for rehabilitation or treatment. Recalling that the Defendant admitted he used marijuana less than a month before the hearing, the trial court noted, "[I]f I had an ecstasy charge and I'm coming up for a sentencing hearing, you would think if I was serious about

my recovery I would not make that [using marijuana] as a choice." Thus, the trial court considered the Defendant's potential for rehabilitation and found that the Defendant's recent drug use indicated he was not likely to reform his behavior.

The trial court then correctly noted that "[t]here are a number of things that [a trial court is] to consider if [it] decides to grant or deny an alternative sentence." After finding the Defendant was of sound physical and mental health, the trial court, as required by Tennessee Code Annotated section 40-35-103, thoroughly explained how both the need to deter like acts and the Defendant's criminal history indicated confinement was necessary:

> [N]ext I'm to consider the facts and circumstances surrounding the offense and the nature and circumstances of the criminal conduct. And this is an outrageously large amount of ecstasy. Those 719 pills could have gone to 719 individuals and affected not only 719 individuals, but 719 families. He does have prior convictions, but as [the State] pointed out . . . all of them were misdemeanors. Except he did pick up a new charge after he was arrested on this charge.

The trial court then acknowledged that it appreciated the Defendant's admission that he used drugs and that it was "impressed" by the testimony of the Defendant's sister, but it explained that the Defendant's repeated criminal conduct outweighed his honesty and his sister's testimony:

> I will say this, he was honest about admitting his drug use . . . . So I appreciate that. . . . I'm impressed by your sister and [her] willingness to help you and by your dad and his willingness to help give you a job. Those are two good folks. But you've not only abused them, you have abused the court system in continuing this criminal activity. So I'm going to order you to serve your sentence.

In summary, the trial court carefully weighed the Defendant's honesty and home environment against the need to deter conduct similar to the Defendant's as well as the Defendant's rehabilitative potential, health, and criminal history.

Here, the record affirmatively shows that the trial court gave due consideration and weight to the evidence presented at the plea hearing, the investigation report, the principles of sentencing, mitigating factors, and the Defendant's potential for rehabilitation. We conclude that the trial court's denial of an alternative sentence is presumptively correct. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and applicable authorities, we conclude the trial court properly denied the Defendant an alternative sentence. We affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

6